THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TIMOTHY DEAN SCOTT, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:10-CV-493-Y |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Timothy Dean Scott, TDCJ-ID #1482383, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Palestine, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

## C. FACTUAL AND PROCEDURAL HISTORY

On January 9, 2008, a jury found petitioner guilty of aggravated assault of a public servant with a deadly weapon and resisting arrest in the 355th Judicial District Court of Hood County, Texas, Case No. CR10425, and assessed his punishment at 35 and 25 years' confinement, respectively. (State Habeas R. at 96-103[1]) In affirming the trial court's judgment, the state appellate court summarized the facts of the case as follows:

> During a September evening in 2006, Hood County Deputy James Yarborough responded to a domestic violence call. He testified that when he arrived, he "could see a disturbance and assault taking place. It was a male subject, striking a female subject around the face area and upper chest area." The male subject, Scott, had a knife in his hand. The female subject was Alice Sue Schuman, Scott's common law wife. The scene was dark and chaotic, with several children contributing to the chaos by running around and screaming.
>
> Deputy Yarborough testified that Schuman's demeanor changed when he approached, and she tried to block him from reaching Scott. He pulled Schuman out of the way. Scott started cutting himself with the knife. Deputy Yarborough instructed Scott to put the knife down, but Scott continued to cut himself. Deputy Yarborough testified that Scott said he was going to cut him or throw the knife at him and "that he was going to make [Deputy Yarborough] commit death by cop," i.e., force Deputy Yarborough to shoot him. He then testified that Scott made two swiping motions towards Deputy Yarborough's chest, close enough that the knife touched his uniform shirt. Although Deputy Yarborough drew his gun, he managed to knock the knife out of Scott's hand with his baton.
>
> Deputy Yarborough testified that Scott actively resisted arrest and that it took three officers to put him in handcuffs. The officers took Scott to Lake Granbury Medical Center; he was released that evening and transported to the Hood County Jail. Deputy Yarborough did not suffer any cut or stab wounds, but he tore ligaments in his right hand that required surgery. A videotape of the incident, taken from Deputy Yarborough's patrol car, was published to the jury.

---

[1]"State Habeas R." refers to the state court record in petitioner's state habeas action in No. WR-44,939-02.

2

*Scott v. State*, No. 02-08-023-CR, slip op., 2009 WL 51035, at *1 (Tex. App.–Fort Worth Jan. 8, 2009) (not designated for publication). Petitioner filed a petition for discretionary review, which was refused by the Texas Court of Criminal Appeals. *Ex parte Scott*, PDR No. 174-09. Petitioner also filed a state application for writ of habeas corpus challenging his convictions, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. (State Habeas R. at cover). This federal petition followed.

### D. ISSUES

Petitioner raises two grounds for relief, in which he claims (1) he received ineffective assistance of trial counsel because counsel failed to investigate and present evidence to support an insanity defense, and (2) the trial court erred by refusing to give a jury instruction on insanity. (Pet. at 7; Pet'r Mem. of Law at 6-21)

### E. RULE 5 STATEMENT

Respondent believes that petitioner has sufficiently exhausted his state court remedies as to the claims presented and that the petition is not barred by limitations or subject to the successive-petition bar. (Resp't Ans. at 5)

### F. DISCUSSION

#### 1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in

3

a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08. Further, the statute requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Thus, factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## 2. Insanity Defense

Petitioner claims the trial court erred by refusing to give a jury instruction on the insanity defense because he properly requested the instruction and presented some evidence of insanity. This claim was addressed by the state appellate court, relying solely on state statutory and case law, as follows:

> A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of the strength of the evidence. The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge. We review the evidence in the light most favorable to the defendant to determine whether a defensive issue should have been submitted.
>
> . . .
>
> Section 8.01 of the penal code states that it is an affirmative defense to prosecution that, at the time of the charged conduct, the defendant, as a result of severe "mental disease or defect," did not know that his conduct was wrong. Article 46C.151(a) of the code of criminal procedure provides that in a case tried to a jury, the issue of the defendant's sanity shall be submitted to the jury "only if the issue is supported by competent evidence." Properly admitted opinion testimony of lay witnesses is sufficient to support a finding of insanity. A defendant is entitled to an instruction on a defensive issue like insanity if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense–that is, if evidence from any source raises the issue of insanity, the trial court must include an instruction on this defense in the jury charge. Although reversal is warranted if the issue is properly raised by competent evidence and the court fails to give the charge upon timely request or objection, if the issue of insanity at the time of the offense is not raised by the evidence, the trial court does not err by failing to instruct the jury upon the law of insanity as a defense.
>
> The focus of the insanity defense is upon the accused's mental state at the time of the alleged offense. Furthermore, the existence of a mental disease, alone, is not sufficient to establish legal insanity; rather, the accused must have been mentally ill at the time of the offense to the point that he did not know his conduct was wrong.
>
> . . .

Scott and his witnesses gave the following testimony:

• According to Scott's younger brother, Scott was not "in his right mind" a few days before the arrest, and he hypothesized that Scott was off of his medication.

• According to David Eugene Allsup, Scott's parole officer, in June 2006, several months before the incident in this case, he was concerned about Scott's ability to understand his rights for a parole hearing because of Scott's withdrawal from his anxiety medicine, Xanax. He testified that Scott was fine ten days later, that Scott was not on the parole mental health caseload, that there was no history of mental illness in Scott's records, and that he did not know if Scott really had mental problems or if he just faked them.

• According to Schuman, Scott was not in his right mind the night of the incident, Scott made bad decisions when not in his right mind, Scott was suicidal, and Scott's mental functioning had been deteriorating over the last month or two.[FN2]

> [FN2] Schuman testified that she and Scott had argued but that he did not assault her and she did not assault him. She testified that Scott cut himself that night and said he wanted to kill himself and die, that the couple had "trouble" over the last month or two, and that the police had been called out before. She called 911 three times before that night and had him arrested for assault, although she testified that he never actually assaulted her or attacked anyone in a violent way. She also testified that she usually started the fights and that she had assaulted him on a previous occasion, hitting him with a mop handle and breaking his ribs. Schuman testified that the State tried to threaten or intimidate her with regard to her testimony, including threatening her with jail, and that in exchange for her testimony, the State offered not to file charges against her. She testified that she was telling the truth in spite of the State's threats.

• According to Scott, he had been diagnosed as paranoid schizophrenic and manic depressive with delusions, he had been on the mental health caseload while in prison, he had been to a mental hospital twice, and a change in his medication caused him to hallucinate. He testified that he did not remember the night of the incident, but that, based on the type of person he is and his review of the videotape of the incident, he must not have known what he was doing was wrong.[FN3]

> [FN3] Scott testified that the fights with Schuman made him crazy and that she had assaulted him several times. He also testified that he never assaulted Schuman, that he was falsely arrested three times, and that he still hears voices but is now able to separate real from unreal.

• According to Lieutenant Peter Collie, from the Hood County Jail, Scott asked him to testify that Scott was crazy.

6

The only person to address whether Scott knew what he was doing was wrong at the time of the offense was Scott himself, in the following testimony during his direct examination:

Q. On the night that we're here about today, were you able to formulate whether or not what you were doing was right or wrong?

A. No. . . . I can't remember what happened.

. . .

Q. Could you formulate in your mind the difference between right and wrong on the night that this happened?

A. I guess not, because I don't remember that night . . . . From looking at the video, I would say I didn't understand what was going on, because all I was – I wasn't trying to hurt anybody but myself. I mean if– if I were holding a knife and somebody were stabbing me, there's – I couldn't – I couldn't even defend myself with a knife. There's no way I could stab someone.

. . .

Q. When did you lose recollection that night?

A. There's times when I've lost three or four days . . . . I guess I didn't know what I was doing[.]

. . .

Q. Are you better now than you were then?

A. Yes, sir. I – that medication seemed to straighten me out or – maybe I'm not getting stabbed every weekend and the police called on me and going to work with black eyes or broke ribs or broke fingers, yeah. I'm better.

Q. But I mean your mental condition, is it better?

A. Yes, sir. I've – I still hear voices, but I know that they're voices I'm hearing and I – I'm able to – I know that they're – they're not real. I mean I can – can separate the two now.

Q. Are you cured now?

A. I don't know. I still hear voices. And I – I'm not stressed out now so I'm not as bad as I was, but what happens if I – a bunch of, you know, I get really stressed out again? I don't know, man. I – what I do know is I've never tried to hurt anybody, and I wasn't trying to hurt anybody but myself.

Q. And you know that from watching the video.

7

A.   I know that from who I am by nature. I mean I might have been – I might have been having some mental issues but I don't think I would have gone against my very nature and become violent just because I was sick.

On cross-examination, Scott gave the following testimony:

Q.   The reason why your testimony is that you don't think you did it is because you say it's not in your nature.

A.   That's right.

. . .

Q.   The idea here, I guess, is that because the police and Ms. Schuman were picking on you, you lost your mind?

A.   Well, no, I wouldn't say that. I had been having some real issues for months before that, but that certainly aggravated the circumstances. I was losing my jobs. I had mortgages to pay. I had new vehicles to pay on. I was going to work with stab wounds, broke ribs, black eyes, broke noses, and I was finding glass pipes under my car seats. She . . . had me illegally jailed for two months, and then when I get out, a 19-year-old kid has been living in my house, driving my truck, and – .

On the record before us, Scott ultimately failed to produce any testimony or other evidence to show that he did not know his conduct was wrong at the time he assaulted Deputy Yarborough or resisted arrest. Scott's lack of memory of the incident and his opinion that he must not have known what he was doing was wrong, based on his review of the videotape and his opinion of his own character, was not enough to entitle him to an instruction on insanity in the jury charge.

*Scott*, 2009 WL 51035, at *2-4 (citations omitted).

Instructional errors of state law generally may not form the basis for federal habeas relief. *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993); *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). To prove constitutional error cognizable under § 2254, a petitioner must demonstrate that the instruction rendered his trial fundamentally unfair in violation of the due process clause. *Henderson v. Kibbe*, 431 U.S. 145, 153 (1977). An omission to give an instruction is less likely to be prejudicial than a misstatement of the law. *Id.* at 155. Absent clear and convincing evidence in rebuttal, the state

court's factual determination that petitioner was not legally insane, as defined by state law, at the time of the offense is not clearly erroneous and is entitled to the presumption of correctness. Accordingly, as a matter of state law petitioner was not entitled to a jury instruction on the insanity defense, and there was no error on the part of the trial court.

Petitioner also claims he received ineffective assistance of counsel at trial because counsel failed to investigate and present additional evidence on the insanity defense during both phases of trial. (Pet. at 7) A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Strickland*, 466 U.S. at 687, 697.

The state habeas court addressed this claim after conducting a hearing by affidavit. Counsel, James Winegardner, responded to petitioner's allegations in his affidavit as follows:

> Under hearing "A," Mr. Scott appears to have written "Counsel filed notice of intent to use insanity defense and brought no evidence caused applicant be denied jury instruction on insanity."
>
> Counsel Winegardner surmounted a defense based on insanity. The court denied a jury instruction on insanity after the presentation of all available insanity evidence. Every lay witness was interrogated regarding the mental condition of the defendant at or near the time of the alleged felony. There was sufficient evidence for the court

9

> to give an instruction on insanity, but the court failed to do so. Counsel considered the availability of mental health expert testimony and medical records. After consulting a mental health professional, Counsel was of the opinion that Counsel could not get an after-the-fact mental health examiner to opine as to Mr. Scott's historical mental health condition at the time of the felony and that no other expert testimony would have been admissible by the court. None of Mr. Scott's other mental health visits or medical records were sufficiently close in time to the event that Counsel believed the court would allow admission of same. Mr. Scott appears to confuse the issue of mental health and the insanity defense. Certainly there is available evidence that Mr. Scott is mentally ill. Evidence of legal insanity sufficient to excuse Defendant's conduct at the time of the event was best proved by the testimony of the witnesses to the event.
>
> Under heading "B," Mr. Scott appears to have written "Counsel failed to present mental health evidence at punishment phase." Counsel did not believe that prior mental health records were admissible at the punishment phase for any legitimate purpose that would have been recognized by the 355th District Court.

(State Habeas Supp. R. at 6)

Based on counsel's testimony, the state habeas court, who also presided over the trial and was familiar with counsel's reputation and legal abilities, found petitioner's claims without merit. The court, applying the *Strickland* standard, concluded that petitioner failed to prove deficient performance and that counsel provided a thorough and aggressive defense. (*Id.* at 8-10) The Texas Court of Criminal Appeals denied the state application without written order or a hearing on the findings of the trial court. (*Id.* at cover)

The record supports the fact that counsel did investigate an insanity defense and determined there were no expert and/or medical records that would support such a defense. Thus, counsel opted, out of necessity, to rely on lay witness testimony to raise the issue. Under state law, when considered with facts and circumstances concerning an accused and the offense, lay witness testimony can be sufficient to raise the defense of insanity. (RR, vol. 3, at 38-39, 56, 81-84, 117-18, 127, 150, 199-201) *Pacheco v. State*, 757 S.W.2d 729, 736 (Tex. Crim. App. 1988). Petitioner presented no

evidence in the state habeas proceedings that an expert in the field was available whose testimony would have benefitted his insanity defense or that other evidence existed in support of the defense. Rather, the evidence presented by petitioner merely reinforces testimony at trial that he suffered from mental illness and drug and alcohol abuse during periods of his life. Petitioner presented no convincing evidence establishing that he was legally insane at the time of the offense to rebut the presumption of correctness of the state courts' adjudication of his claim. Thus, applying the presumption of correctness, the state courts' denial of habeas relief is not contrary to, or involve an unreasonable application, of *Strickland*.

## II. RECOMMENDATION

Petitioner's petition for writ of habeas corpus should be denied. All pending motions not previously rule upon are denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until August 19, 2011. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing

11

before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV. ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until August 19, 2011, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July **29**, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE